IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHANDRA HODGE, Individually and as the Surviving Mother of SCHASTON HODGE, and as the Administrator of the Estate of SCHASTON HODGE, | § § § § § | |
| | § | CIVIL ACTION NO. _____ |
| *Plaintiff*, | § § | |
| v. | § § | |
| | § | JURY TRIAL DEMANDED |
| JOSHUA ENGLEMAN, ROBERT LITVIN, TEXAS DEPARTMENT OF PUBLIC SAFETY, and THE CITY OF DALLAS, TEXAS, | § § § § § § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Shandra Hodge, Plaintiff, individually and as the surviving mother of Schaston Hodge and as the administrator of the Estate of Schaston Hodge, complaining of Defendants Joshua Engleman ("Engleman") in his individual capacity, Robert Litvin ("Litvin") in his individual capacity, Texas Department of Public Safety ("TDPS"), and the City of Dallas, Texas ("the City"), and for cause would show the Honorable Court as follows:

### I.   NATURE OF THE ACTION

1. On or about August 17, 2019, Schaston Hodge was shot 16 times by Joshua Engleman and Robert Litvin, two white male officers working with the TDPS in conjunction with the City of Dallas and the Dallas Police Department.

2. This is an action brought by the Plaintiff against Defendants for their use of excessive force

PLAINTIFF'S ORIGINAL COMPLAINT                                                                                       Page 1

under the color of state law resulting in the unlawful shooting and killing of Schaston Hodge in violation of his rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.C. § 1983.

3. This action also asserts claims under state law for assault and battery against Defendants Joshua Engleman and Robert Litvin.

4. Plaintiff alleges that the City and TDPS failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise properly equip and control officers including those who are known, or who should have been known, to engage in the use of excessive force and/or deadly force. Further, the City and TDPS failed to properly implement training and policies governing how and when to use deadly force, as well as how to apprehend and/or encounter fleeing suspects.

5. The City and TDPS had a duty, but failed to implement and/or enforce training, policies, practices, and procedures for the Dallas Police Department and the TDPS that respected Plaintiff's constitutional rights. And accordingly, when the City utilized and allowed TDPS officers to patrol its streets, it failed to do the same.

6. Defendant City and TDPS's failure to adequately supervise, discipline, and train Defendants Litvin and Engleman, failure to implement the necessary policies and procedures, and affirmative implementation of unconstitutional policies caused Schaston Hodge's unwarranted and excruciating physical and mental anguish and death.

7. Defendants Engleman and Litvin acted in an objectively unreasonable manner and disregarded the rights of Plaintiff, knowing that the City and TDPS would approve and/or ratify their actions.

8. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks redress and compensation for damages in the unjustified shooting and killing of Schaston

Hodge.

## II.    PARTIES

9. Plaintiff, Shandra Hodge, is a resident of Dallas County, Texas. Plaintiff is the surviving mother of Schaston Hodge, Decedent, and brings this wrongful death action on his behalf as a surviving parent. *See* Tex. Civ. Prac. & Rem. Code § 71.021. Plaintiff also brings this survival action on behalf of the Estate of Schaston Hodge. Plaintiff is an heir of Decedent's Estate. No administration of the Estate of Schaston Hodge has been initiated, as it is believed that no administration is necessary.

10. Defendant Joshua Engleman, on information and belief, is a police officer with the TDPS, who was acting on behalf of the City of Dallas. At all times material hereto, Defendant Engleman was acting under color of law. Engleman may be served through TDPS by serving Director Steven McCraw at 5805 North Lamar Blvd., Austin, TX 78752.

11. Defendant Robert Litvin, on information and belief, is a police officer with the TDPS, who was acting on behalf of the City of Dallas. At all times material hereto, Defendant Engleman was acting under color of law. Engleman may be served through TDPS by serving Director Steven McCraw at 5805 North Lamar Blvd., Austin, TX 78752.

12. Defendant Texas Department of Public Safety is a governmental entity duly organized and existing under the laws of the State of Texas. TDPS may be served by serving Director Steven McCraw at 5805 North Lamar Blvd., Austin, TX 78752. The State of Texas funds and operates the TDPS, which, is responsible for implementation of the policies, procedures, practices, and customs of TDPS, as well as the acts and omissions, challenged by this suit. The TDPS is also responsible for preventive, investigative, and enforcement services for all citizens in Texas. All actions that form the basis of this lawsuit were performed pursuant to policies and procedures, customs and practices of Defendant, the TDPS.

13. Defendant the City of Dallas, Texas is a governmental entity duly organized and existing under the laws of the State of Texas. The City of Dallas funds and operates the Dallas Police Department ("DPD"), which, along with the Dallas City Council, Dallas City Manager's office and Chief Renee Hall, are responsible for the implementation of the DPD's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The DPD is also responsible for preventive, investigative, and enforcement services for all citizens of the City of Dallas. All actions that form the basis of this lawsuit were performed pursuant to policies and procedures, customs and practices of Defendant, the City of Dallas. The City may be served with citation herein by and through its agent for service of process, Christopher Caso, City Attorney, Dallas City Hall, 1500 Marilla Street, Dallas, Texas 75201.

## III.     JURISDICTION AND VENUE

14. Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourth Amendment rights of J.C. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

15. Venue is proper in this Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Northern District of Texas.

## IV.     FACTUAL BACKGROUND

16. At the request of Dallas Police Chief Renee Hall, Governor Greg Abbott directed the TDPS to provide direct support to the Dallas Police Department, including officers, personnel, and other resources to coordinate on law enforcement efforts in Dallas.

17. On the night of August 17, 2019, Schaston Hodge was legally driving his car through his neighborhood in Dallas, Texas. Hodge was driving to his grandmother's house, where he stayed, as her grandson and her caretaker due to her various medical conditions.

18. While driving, Hodge made a complete stop at a stop sign, but allegedly did not utilize his left turn signal while turning into a street near his neighborhood. There was no other traffic or vehicles around during this time.

19. Defendants Litvin and Engleman were finishing up another traffic stop on a different suspect before they allegedly witnessed Hodge fail to use his turn signal. This alleged minor traffic infraction prompted Litvin and Engleman to engage in a pursuit of Hodge with their patrol vehicle.

20. Hodge, being so close to home, decided he would pull his vehicle onto the property of his home to comply with the traffic stop being initiated by Litvin and Engleman. However, Litvin and Engleman, decided to give chase to Hodge and proceeded to drive recklessly and dangerously through the Dallas neighborhood behind Hodge.

21. Within a minute of allegedly committing his minor traffic violation, Hodge made it to his home.

22. Litvin, who was driving the patrol vehicle, sped up to the driveway of Hodge's home, opened the door of his patrol vehicle and without warning or reason, ran up the private driveway, with his gun drawn, repeatedly yelling "Show me your hands" as Hodge parked his vehicle and prepared to exit.

23. As Hodge was exiting his vehicle, he attempted to comply with Litvin's command to show his hands. Hodge turned towards to the officer to comply but was immediately shot multiple times by Litvin.

24. Litvin, without reason or lawful justification for this level of force, began shooting Hodge

while continuing to yell commands at Hodge.

25. Engleman joined in the shooting once hearing and seeing that Litvin initiated deadly use of force.

26. Even while Hodge was on the ground, shot multiple times, and presumably deceased with no ability to constitute a threat against any of the officers, Litvin continued to yell commands at Hodge and continued to fire his service weapon.

27. At the time that the officers made contact with Hodge the following facts were true and known to Defendants Litvin and Engleman:

    a. Hodge was standing in his own residence and home.

    b. Hodge posed no threat of harm to Litvin and Engleman.

    c. Hodge and was being "pulled over" for allegedly not signaling while making a turn at a stop sign.

28. Hodge was shot a total of 16 times outside of his residence.

29. A total of 19 shots were fired, with 8 shots by Litvin and 11 shots by Engleman.

30. Hodge never attempted to harm Litvin or Engleman in any way.

31. Hodge never verbally threatened Litvin or Engleman in any way or gave the Defendants reason or justification for the use of deadly force.

32. Litvin and Engleman never attempted to de-escalate the encounter, despite knowing that Hodge posed no threat of harm. Even when Hodge attempted to comply, the officers immediately resorted to deadly use of force.

### V.  CAUSES OF ACTION

#### COUNT I: 42 U.S.C. § 1983 EXCESSIVE FORCE
#### PLAINTIFF AGAINST DEFENDANTS LITVIN AND ENGLEMAN

33. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

34. Plaintiff would show that Hodge was killed as a direct result of Litvin and Engleman's use of force that was clearly excessive and the excessiveness of which was clearly unreasonable. That is, Litvin and Engleman, without justification and the need to do so, used excessive force as described above and killed Hodge without legal justification. Their use of force was clearly excessive and clearly unreasonable because Hodge never made any threatening gestures toward Defendants and did not pose an immediate threat to the safety of Litvin, Engleman, or others.

35. Defendants were not provoked when they fired 19 shots at Hodge while he was outside his residence for no lawful or justifiable reason. Hodge died as a result of 16 gunshot wounds to his body. The excessive and deadly force used by Defendants was not reasonable or justified, nor was it necessary under the circumstances.

36. Defendants' actions were not objectively reasonable because Hodge did not pose an immediate risk of serious physical harm to Defendants or any other person.

37. Defendants embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause and, in fact, caused Hodge to suffer extreme and severe mental and emotional distress, agony and anxiety.

38. It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others.

### COUNT II: 42 U.S.C. § 1983 MUNICIPAL LIABILITY
### PLAINTIFF AGAINST DEFENDANTS CITY OF DALLAS AND TEXAS DEPARTMENT OF PUBLIC SAFETY
*Unconstitutional Custom, Policy or Practice*

39. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

40. The actions of Defendants, which resulted in the death of Schaston Hodge, were done pursuant to one or more interrelated *de facto* as well as explicit policies, practices, and/or

customs of the Defendants, City of Dallas and the TDPS.

41. On and for some time prior to August 17, 2019 (and continuing to the present date) Defendants City and the TDPS deprived Plaintiff of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that said Defendants and their supervising, and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, knowingly maintained, enforced and applied an official policy recognized by the City and TDPS.

42. Litvin and Engleman acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the City and TDPS.

43. Defendant City, together with the TDPS and other Policymakers, including the City Council and supervisors maintained, inter alia, the following unconstitutional customs, practices, and policies:

   a. Using excessive force;
   b. Providing inadequate training regarding the use of force;
   c. Providing inadequate training regarding the de-escalation of force;
   d. Employing and retaining as law enforcement officers those who Defendant City and TDPS, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens through excessive use of force;
   e. Inadequately supervising, training, controlling, assigning and disciplining law enforcement officers who Defendants each knew, or in the exercise of reasonable care, should have known had the aforementioned propensities and character traits;
   f. Employing and retaining officers who have been known to be abusive;

g. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by those who are law enforcement officers;

h. Failing to adequately discipline law enforcement officers for the above-referenced categories of misconduct and discipline that is so slight that is tantamount to encourage misconduct;

i. Having a *de facto* policy of "shoot first and ask questions later;"

j. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants were affirmatively linked to, and were a significantly influential force behind the unjustified shooting death of Schaston Hodge.

### COUNT III: 42 U.S.C. § 1983 MUNICIPAL LIABILITY
### PLAINTIFF AGAINST DEFENDANTS CITY OF DALLAS AND TEXAS DEPARTMENT OF PUBLIC SAFETY
*Failure to Train*

44. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

45. The City and TDPS are liable for all damages suffered by Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and 42 U.S.C. § 1983 based on an official policy or custom of the City and TDPS of which the Policymakers all had actual or constructive knowledge that was a moving force behind the constitutional violations alleged herein.

46. The conduct of Litvin and Engleman as set forth in the preceding paragraphs evinces the excessive and unreasonable use of force in violation of Plaintiff's constitutional rights.

47. The conduct set forth supra evinces a custom of using excessive or improper force, a lack of policies and training instructing deputies on the appropriate manner in which to handle individuals through non-lethal tactics, the use of deadly force, and pursuit of fleeing suspects.

48. With respect to the claims made the basis of this lawsuit, the City and the TDPS failed to adequately train, supervise or discipline its employees regarding the unnecessary use of excessive force. The failure to train, supervise or discipline its employees in a relevant respect reflects a deliberate indifference on City and TDPS to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

49. Defendants developed and maintained a policy of deficient training of its police force in the appropriate use of force against suspects who are fleeing and/or suspects not resisting. The Defendants' training is designed and implemented to act in this regard.

50. For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Plaintiff's constitutional rights:

    a. The inadequacy of Defendants' policies, training, supervision or discipline relating to the use of excessive force;

    b. The inadequacy of Defendants' policies, training, supervision or discipline relating to the use of non-lethal force and tactics;

    c. The inadequacy of Defendants' policies, training, supervision or discipline relating to pursuing fleeing suspects;

    d. The adoption of completely subjective continuum of force policy that can be expressly avoided, and which leaves the use of excessive force exclusively to the unchecked discretion of officers on the scene;

    e. The adoption of a policy that allows officers to use the degree of force that the officer feels brings the situation quickly under control as per his or her individual judgment even if that method is excessive force;

    f. Lack of training in regard to effective communication with citizens while giving them commands and determining their compliance;

    g. Using excessive force against Hodge although he caused no immediate threat; and

    h. Using excessive force against Hodge while he was attempting to comply with officer commands.

51. Defendants' failure to properly train, supervise and discipline its police officers regarding the use of force was the proximate cause of the violation of Plaintiff's constitutional rights.

### COUNT IV: 42 U.S.C. § 1983 MUNICIPAL LIABILITY
### PLAINTIFF AGAINST DEFENDANTS CITY OF DALLAS AND TEXAS DEPARTMENT OF PUBLIC SAFETY
*Failure to Supervise and/or Discipline*

52. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

53. On Plaintiff's governmental liability claim against the City and TDPS for failing to supervise and/or discipline its officers for prior violations and the resulting lack of supervision:

    a. Defendants failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal;

    b. Defendants were deliberately indifferent to the need to supervise and/or discipline its officers and/or employees adequately;

    c. The failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Plaintiff's constitutional rights; and

    d. Defendants failed to adequately supervise and/or discipline Litvin and Engleman for shooting and killing Hodge for no lawful reason, resulting in Plaintiff's damages.

54. Despite having knowledge of the violations of the policies and other best police practices as described above, Defendants failed and/or refused to adequately discipline Litvin and Engleman. Defendants were well aware of the behavior of the officers but have failed to take any actions. Defendants' failure to adequately supervise and/or discipline its officers was therefore the moving force behind Plaintiff's damages.

## COUNT V: ASSAULT AND BATTERY
## PLAINTIFF AGAINST DEFENDANTS LITVIN AND ENGLEMAN

55. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

56. On August 17, 2019, Litvin and Engleman, while acting within the course and scope of their duties as law enforcement officials for the City and TDPS, without provocation, necessity or legal justification, assaulted and battered Plaintiff by repeatedly shooting Hodge while he posed no threat of harm to them, thereby causing Hodge's injuries as herein described.

57. On information and belief, Plaintiff alleges that the City and TDPS and their Policymakers are responsible for implementing, maintaining, sanctioning, ratifying, and/or condoning a policy, custom, or practice under which the Defendant officers committed the aforementioned illegal and wrongful acts.

58. On information and belief, Plaintiff alleges that the City and TDPS and its Policymakers are each liable for the injuries and damages sustained by Plaintiff as they knew, or should have known, the customs, practices, policies would enable the unlawful and unconstitutional acts of Litvin and Engleman.

59. As a result of all Defendants' acts and omissions as described, Hodge was brutally shot and killed by Litvin and Engleman.

60. Defendants each committed the aforementioned acts and omissions knowingly, willfully, maliciously and with the expressed intent to harm Hodge and conscious or reckless disregard for the harm that resulted from the shooting. By reason thereof, Plaintiff seeks punitive and exemplary damages from Defendants, in an amount according to proof at trial.

## VI.    DAMAGES

61. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

62. **Actual damages.** Defendants' acts and/or omissions were a proximate cause and the moving force behind the following actual damages suffered by the Plaintiff and Defendants should be held jointly and severally liable for the following damages:

    a. **Excessive Force**
        i. Actual Damages;
        ii. Disfigurement;
        iii. Conscious pain and mental anguish suffered by Schaston Hodge;
        iv. Mental anguish and emotional distress sustained as a result of Defendant Litvin and Engleman's excessive force.

**Punitive/Exemplary Damages against all Defendants.** Punitive/exemplary damages are recoverable under section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Here, the conduct of the Defendants was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of the Plaintiff. As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future.

63. Prejudgment and post judgment interest.
64. Costs of court.
65. Reasonable and necessary attorney's fees incurred by the Plaintiff through trial, and reasonable and necessary attorney's fees that may be incurred by Plaintiff for any post-trial proceedings, or appeal, interlocutory or otherwise, pursuant to 42 U.S.C. § 1988.
66. Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

### VII.   TRIAL BY JURY

67. Plaintiff has paid a jury fee and demands trial by jury.

## VIII.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff recovers judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff is justly entitled.

Respectfully Submitted,

By: */s/ Shayan Elahi*
Shayan Elahi, Esq.
State Bar No. 24080485
ELAHI LAW FIRM
8111 LBJ Freeway, Suite 655
Dallas, TX 75251
Telephone: (972) 765-6715
Shayan@ElahiLawFirm.com

By: */s/ Blerim Elmazi*
Blerim Elmazi, Esq.
State Bar No. 24118375
THE LAW OFFICES OF BLERIM ELMAZI
800 N. Fielder Rd., Suite 100 C
Arlington, TX 76012
Telephone: (817) 438-0123
Blerim@ElmaziLaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2021, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

*/s/ Shayan Elahi*
**Shayan Elahi**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Shandra Hodge

**DEFENDANTS**
Robert Litvin, Joshua Engleman, City of Dallas, Texas Department of Public Safety

**(b)** County of Residence of First Listed Plaintiff: Dallas County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Dallas County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Shayan Elahi, Elahi Law Firm; 8111 LBJ Freeway, Suite 655, Dallas, TX 75251;

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION
[x] 3 Federal Question (U.S. Government Not a Party)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

## IV. NATURE OF SUIT
[x] 440 Other Civil Rights

## V. ORIGIN
[x] 1 Original Proceeding

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing: 42 U.S.C. Section 1983
Brief description of cause: Excessive Force

## VII. REQUESTED IN COMPLAINT:

## VIII. RELATED CASE(S) IF ANY

DATE: 8-17-2021
SIGNATURE OF ATTORNEY OF RECORD: Blerim Elmazi

FOR OFFICE USE ONLY