# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SHANDRA HODGE | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-1916-S |
| | § | |
| JOSHUA ENGLEMAN and ROBERT | § | |
| LITVIN | § | |
| | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This Memorandum Opinion and Order addresses the Third Motion to Dismiss of Defendants Engleman & Litvin ("Motion") [ECF No. 41] pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). The Court has reviewed the Motion, Plaintiff's Response to Defendants' Third Motion to Dismiss ("Response Brief") [ECF No. 42], appended video evidence, and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

## I.      BACKGROUND

Plaintiff Shandra Hodge, the mother of Decedent Schaston Hodge ("Hodge") and the administrator of his estate, brings this 42 U.S.C. § 1983 action following his fatal shooting by two Texas Department of Public Safety ("DPS") officers, Defendants Joshua Engleman ("Engleman") and Robert Litvin ("Litvin").

In the late evening on August 17, 2019, Hodge, while driving in his car, stopped at a stop sign before turning without using his turn signal. *Id.* ¶ 13. Litvin and Engleman claim they saw Hodge fail to use his signal and followed him. *Id.* ¶ 14. The officers turned on their duty vehicle lights and pursued Hodge, traveling at approximately fifty miles per hour. *See* Body Camera Footage of Engleman at 02:25-02:28; Body Camera Footage of Litvin at 02:20-02:22. Without pulling over, Hodge drove to his grandmother's home. *See* Body Camera Footage of Engleman at

00:00-03:51; Body Camera Footage of Litvin at 00:00-03:50; Compl. ¶ 15. Litvin and Engleman

followed him for about four minutes. *Id.* Hodge then parked his vehicle in the driveway. *Id.* Litvin

and Engleman parked the police car in front of the house, exited the vehicle with their guns drawn,

and ran up the driveway at the side of the home. *See* Body Camera Footage of Engleman at 03:51-

03:58; Body Camera Footage of Litvin at 03:50-03:52; Compl. ¶ 17. Litvin shouted at Hodge, "let

me see your hands." *See* Body Camera Footage of Engleman at 03:57-03:58; Body Camera

Footage of Litvin at 03:52. Hodge exited his vehicle with a gun in his hands. *See* Body Camera

Footage of Engleman at 03:57-03:59; Compl. ¶ 27.  He pointed the gun in the direction of the

officers.[1] *See* Body Camera Footage of Engleman at 03:57-03:59.

 

Stills from Body Camera Footage of Engleman at 03:58.

Litvin immediately began shooting at Hodge.[2] *See* Body Camera Footage of Engleman at

03:58-04:02; Body Camera Footage of Litvin at 03:52-03:55; Compl. ¶ 19-20. Less than a second

later, Engleman also started to shoot at Hodge. *See id.* Over the course of approximately three to

four seconds, the officers shot at Hodge a combined total of nineteen times: Litvin fired eight shots

---

[1] According to Plaintiffs, Hodge "attempted to comply with Litvin's command to show his hands" and "posed no threat of harm" to the officers. Compl. ¶¶ 18, 22. The appended video footage, however, "blatantly contradict[s]" Plaintiff's claims. *See Harmon v. City of Arlington*, Texas, 16 F.4th 1159, 1163 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[2] It is unclear from the videos who fired the first shot. As it must, the Court views the evidence in a light most favorable to Plaintiff for the purposes of evaluating the motion to dismiss. While Defendants claim Hodge shot his weapon first, the Court resolves all doubts in favor of Plaintiff. Therefore, the Court will undergo its analysis without considering this fact. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

and Engleman fired eleven in rapid succession. Compl. ¶ 20. Sixteen of the shots struck Hodge and killed him. *Id.*

Plaintiff asserts two claims against Litvin and Engleman. Plaintiff alleges that the officers used excessive force against Hodge in violation of 42 U.S.C. § 1983 and that the officers committed assault and battery against Hodge.[3] *See* Compl. ¶¶ 35-46. Plaintiff seeks damages in connection with these causes of action. *See id.* ¶¶ 47-52.

## II.      LEGAL STANDARD

### A.     *12(b)(6) Motion to Dismiss*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Sonnier*, 509 F.3d at 675. However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise

---

[3] Though Plaintiff also claims intentional infliction of emotional distress in her Response Brief, this claim is not included in her First Amended Complaint. *See* Resp. Br. 17.

a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a district court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). However, the court may consider documents outside of the pleadings if they fall within certain limited categories, including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey*, 540 F.3d at 338. Where parties include video recordings in the pleadings, the video depiction of the events, "viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon*, 16 F.4th at 1163 (quoting *Scott*, 550 U.S. at 380).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

### B. *Qualified Immunity*

Under 42 U.S.C. § 1983, private citizens may sue public officials for violations of their federal statutory or constitutional rights. *See Monroe v. Pape*, 365 U.S. 167, 171 (1961). Section 1983, however, shields public officials from civil liability under the doctrine of qualified immunity "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly

incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (internal quotation marks omitted).

The qualified immunity defense has two prongs: (1) whether an official's conduct violated a statutory or constitutional right of the plaintiff; and (2) whether the right was "clearly established" at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson*, 555 U.S. 223. "A court may rest its analysis on either prong." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citing *Morgan v. Swanson*, 659 F.3d 359, 385 (5th Cir. 2011) (en banc)); *see Pearson*, 555 U.S. at 236.

A defendant is "entitled to qualified immunity at the motion-to-dismiss stage unless the plaintiffs have alleged facts sufficient to plausibly show that the defendant's conduct violated a constitutional right and the constitutional right was clearly established at the time of the alleged misconduct." *Harmon*, 16 F.4th at 1163.

### III.    ANALYSIS

#### A. *Violation of Constitutional Right*

The Fourth Amendment confers the right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV. A seizure is unreasonable if it involves excessive force. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). To state a Fourth Amendment excessive force claim under 42 U.S.C. § 1983, a plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). Because "inquiries regarding whether a use of force was 'clearly excessive' or 'clearly unreasonable . . . are often intertwined,'" courts often consider those questions together. *Hanks*, 853 F.3d at 744 (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)). An injury is "generally legally cognizable when it

results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).

### 1) Reasonableness of Force

The Court must determine the reasonableness of the use of force "from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. This inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396; *see also Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 342 (5th Cir. 2020) (holding that the use of force must be proportionate "to the situation"); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) ("Excessive force claims are necessarily fact-intensive."). The totality of the circumstances must justify the particular use of force. *See Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008).

The ultimate inquiry is whether the force used was reasonable "under the facts as a reasonable officer *would perceive them.*" *Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016). In analyzing Defendant's use of force, the Court considers "only the facts that were knowable" to Defendant at the time. *White v. Pauly*, 137 S. Ct. 548, 550 (2017) (per curiam); *see Brown*, 623 F.3d at 253 ("An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight.").

6

###### i.   *Defendants' Use of Force*

Plaintiff alleges that Litvin and Engleman responded with excessive force when they ran up Hodge's driveway with their guns drawn, fired their weapons at Hodge nineteen times in rapid succession, and killed him. Resp. Br. 7-8, 12. Plaintiff argues that the quantity of shots fired by the officers, eight by Litvin and eleven by Engleman, coupled with their continued use of force after Hodge was incapacitated on the ground, constituted excessive force. *See id.* As Litvin and Engleman engaged in virtually identical conduct in response to the same threat under the same circumstances, the Court will assess the reasonableness of the officers' response together.

Of the factors identified in *Graham*, "whether the suspect poses an immediate threat to the safety of the officer or others" is of utmost importance in this case. 490 U.S. at 396. For cases where deadly force is involved, the Fifth Circuit has narrowed the excessive force inquiry to "whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (quoting *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 493 (5th Cir. 2001)). Therefore, the Court "need not look at any other moment in time." *Rockwell v. Brown*, 664 F.3d 985, 993 (5th Cir. 2011). Where a suspect poses a "significant and imminent threat of serious harm" to one or more officers, the use of deadly force in response to the threat is justified. *Rockwell*, 664 F.3d at 991-92; *see also Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) ("The use of deadly force is constitutional when the suspect poses a threat of serious physical harm to the officer or others.").

When considering the threat posed to an officer, the Fifth Circuit gives great weight to whether a suspect is armed and defiant. In *Garza v. Briones*, the Fifth Circuit held that officers who fired sixty-one shots at a suspect armed with a BB gun at a truck stop—shooting him eighteen times and killing him—was reasonable when the suspect refused to obey requests to drop his

weapon and raised what appeared to be a real gun in the direction of an officer. 943 F.3d 740, 748

(5th Cir. 2019). In *Wilson v. City of Bastrop*, the Fifth Circuit held that the officers' shooting and

killing of an armed, fleeing suspect was reasonable when the suspect previously ran toward an

officer and refused multiple demands to drop his gun. 26 F.4th 709, 715-16 (5th Cir. 2022). And

in *Knoulton*, the Fifth Circuit held that an officer's shooting of an armed suspect in a car was

reasonable when the suspect refused orders to show his hands, officers saw he held a gun, and the

suspect briefly put his hands together in what "could reasonably be interpreted as a threatening

gesture." 542 F.3d at 131.

Here, the video evidence does not support Plaintiff's conclusion that Hodge "posed no

threat of harm," "attempted to comply . . . with" commands, and "never attempted to harm [the

officers] in any anyway." Resp. Br. 12. At "the moment of the threat that resulted" in the shooting,

Hodge exited his vehicle after refusing police instructions to pull over and show his hands, held

his gun, and, like the defendant in *Garza*, pointed the weapon in the officers' direction. *Harris*,

745 F.3d at 772; *see Garza*, 943 F.3d at 748. Regardless of whether Hodge aimed at Engleman or

Litvin when he carried his gun, Hodge did pose a "significant and imminent threat of serious harm"

to both officers by pointing the weapon in their direction from no more than fifteen feet away.

*Rockwell*, 664 F.3d at 991-92. Under Fifth Circuit law, Litvin and Engleman were entitled to use

deadly force under these circumstances. *See Elizondo*, 671 F.3d at 510; *Knoulton*, 542 F.3d at 131;

*Wilson*, 26 F.4th at 714 ("[W]e have never required officers to wait until a defendant turns towards

them, with weapon in hand, before applying deadly force to ensure their safety.") (quoting *Salazar-

Limon v. City of Houston*, 826 F.3d 272, 279 n.6 (5th Cir. 2016)). Litvin and Engleman, operating

under rapidly evolving circumstances, were "not require[d] . . . to wait until [Hodge shot his gun]

to confirm that a serious threat of harm exist[ed]." *Id.* at 130 (quoting *Elliott v. Leavitt*, 99 F.3d

640, 643 (4th Cir. 1996)). The officers' use of force in response to Hodge's deadly threat was reasonable "under the facts as a reasonable officer would perceive them." *Griggs*, 841 F.3d at 313.

Plaintiff also alleges that the officers' firing of nineteen shots in approximately three-and-a-half seconds, some after Hodge fell to the ground and "was rendered defenseless and incapable of moving his body," was excessive force. *See* Body Camera Footage of Litvin at 03:52-03:56; Compl. ¶ 33. But the Fifth Circuit, quoting the Supreme Court, has ruled that "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Garza*, 943 F.3d at 748 (citing *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014), and holding that officers firing sixty-one shots in eight seconds was not objectively reasonable). While some shots were fired after Hodge fell to the ground, the officers immediately ceased shooting within one second after Hodge's incapacitation and did not resume firing their weapons at any point after. *Contra Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 273-74 (5th Cir. 2015) (holding that genuine issue of material fact existed as to the reasonableness of an officer's conduct when he shot a suspect five times, the suspect "la[id] on the ground," and after a break, the officer fired two more shots into the suspect's back).

Plaintiff also argues that the officers followed Hodge for "a minor traffic violation" and shot him as he fled. Resp. 13; *see* Resp. 16. And Defendants do not dispute that the officers followed Hodge for failing to use his turn signal. *See* Motion 1. The Court, however, does not and need not reach the issue of the propriety of the officers' pursuit; the inquiry as to the reasonableness of deadly force looks "at the moment of the threat that resulted" in the shooting and the Court "need not look at any other moment in time." *Bazan*, 246 F.3d at 493.

Given the totality of the circumstances, the Court finds that Litvin and Engleman, encountering an armed, suspect who pointed a gun in their direction, used permissible force under

the circumstances. The Court holds that neither Engleman nor Litvin's use of force violated Hodge's constitutional rights. Accordingly, Plaintiff has not pleaded facts to defeat Defendants' defense of qualified immunity.

### B.  *Clearly Established Right*

Defendants are also entitled to the defense of qualified immunity because Plaintiffs have not met their "heavy" and "demanding" burden of showing that Defendants' use of force violated a clearly established right. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019); *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016).

To constitute a violation of a clearly established right, existing case law must place the constitutional question "beyond debate." *Morrow*, 917 F.3d at 874 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis omitted). "[T]he Supreme Court has repeatedly instructed that clearly established law is *not* to be defined at a high level of generality. This is particularly true in recent years." *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021) (emphasis in original) (citing *City of Escondido v. Emmons*, 139 S. Ct. 500 (2019); *Kisela v. Hughes*, 138 S. Ct. 1148 (2018); *Mullenix*, 577 U.S. 7). "[O]utside of an obvious case, the law is only clearly established if a prior case exists where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Hanks*, 853 F.3d at 747 (internal quotation marks omitted) (quoting *White*, 137 S. Ct. at 552).

Plaintiff points to the Supreme Court's holding in *Tennessee v. Garner* to demonstrate Defendants violated a clearly established right. *See* Resp. Br. 13, 16. The Court there held that

"'[w]here a suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.'" *Tennessee v. Garner*, 471 U.S. 1, 9-10 (1985). In that case, police officers shot and killed an unarmed teenager who attempted to flee from cops by jumping a fence after the suspect burglarized a home at night. *Garner*, 471 U.S. 1 at 20-21. The officers shot at the suspect despite having no reason to believe the suspect was armed. *Id.* The facts of this case are distinguishable from *Garner*. Unlike the suspect in *Garner*, Hodge did not merely flee from the officers. Hodge was armed with a gun and pointed the weapon at the officers when they attempted to confront him. Hodge posed an immediate threat of harm to the officers, and a "like-situated, reasonable government agent" at the other end of a barrel of gun wielded by an armed, non-compliant suspect would not be on notice that the use of deadly force would violate existing law. *Pierce*, 117 F.3d at 882. Plaintiff's reliance, therefore, on *Garner* to demonstrate that the officers here violated any clearly established right is unavailable.

Plaintiff also relies on *Lytle v. Bexar Cnty. See* Resp. Br. 16. In *Lytle*, the Fifth Circuit held that "'[i]t has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officers of others.'" 560 F.3d 404, 417 (5th Cir. 2009). In *Lytle*, the officers shot at a suspect who fled police pursuit by car after leaving the scene of a car accident. *Id.* at 407-08. The officers' shots struck the suspect's fifteen-year-old daughter who was sitting in the car and killed her. *Id.* The Court found the officers violated the girl's clearly established right because she and her father did not pose a sufficient threat of harm to justify deadly force when they drove about three or four houses away from the officers to evade arrest. *Id.* at 417-18. Again, the facts of this case are distinguishable. Unlike the suspect in *Lytle*, Hodge was armed with a

weapon and created an imminent threat of harm when he pointed the weapon at the officers. Similarly, Plaintiff's reliance on this case fails.

Plaintiff does not cite any case where the Fifth Circuit has found a violation of a clearly established right where officers used deadly force against an armed suspect who pointed a weapon at one or more officers. Indeed, the Fifth Circuit has denied the existence of a clearly established right in cases under similar facts. *See, e.g.*, *Mace v. City of Palestine*, 333 F.3d 621, 624-25 (5th Cir. 2003) (holding there was no excessive force when officers shot intoxicated suspect who brandished a sword and refused to obey orders to drop the weapon); *Knoulton*, 542 F.3d at 131 (holding there was no excessive force when officers shot suspect who was mentally unstable, armed, and moving his hands in a threatening manner); *Harris*, 745 F.3d at 770, 772-73 (finding no constitutional violation where officers breached open bedroom door and shot suicidal suspect after he raised a knife over his head and advanced toward them).

Plaintiff has failed to identify any clearly established law in her pleadings that is particularized to the facts at issue. Thus, the Court finds that Defendants are entitled to qualified immunity. As the Fifth Circuit recently held, "[t]he specificity requirement assumes special significance in excessive force cases, where officers must make split-second decisions to use force." *Harmon*, 16 F.4th at 1166.

### C. *State Law Claims*

Plaintiff alleges the officers in their individual capacities committed assault, battery, and intentional infliction of emotional distress under state law. *See* Compl. ¶¶ 41-46; Resp. Br. 17.

Defendants maintain that the Texas Tort Claims Act ("TTCA") requires dismissal of Plaintiff's state law claims because Section 101.106(f) shields the officers from suit. *See* Motion 7-8. Under 101.106(f) of the TTCA, if "a suit is filed against an employee of a governmental unit

based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." Tex. Civ. Prac. & Rem. Code § 101.106(f). A court should treat a suit against an employee in the individual's official capacity as a suit against the governmental entity itself. *Davray, Inc. v. City of Midlothian*, Texas, No. CIV.A.3:04-CV-0539-B, 2005 WL 1586574, at *17 (N.D. Tex. July 6, 2005). "On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed." TEX. CIV. PRAC. & REM. CODE § 101.106(f). Plaintiff has not done so.

Plaintiff alleges that Defendants committed tortious conduct while acting "within the course and scope of their duties as law enforcement officials for the City and TDPS." Compl. ¶ 42. Therefore, because the allegations are "based on conduct within the general scope of that employee's employment," and the suit could have been brought against the governmental entity itself,[4] Plaintiff's state law claims are barred by the TTCA. TEX. CIV. PRAC. & REM. CODE § 101.106(f); *see Smith v. Heap*, 31 F.4th 905, 914 (5th Cir. 2022); *Harmon*, 478 F. Supp. 3d at 577; *Franka v. Velasquez*, 332 S.W.3d 367, 381-84 (Tex. 2011). The officers, as employees, have moved to dismiss the claims under Section 101.106(f). *See* Motion 7-8. Pursuant to that Section, the Court dismisses the state claims against the officers.

## CONCLUSION

Plaintiff has not plausibly alleged an unconstitutional use of excessive force by Defendants Robert Litvin or Joshua Engleman. Nor do Plaintiff's pleadings against the Defendants warrant

---

[4] "[A]ll tort theories alleged against the governmental unit, whether it is sued alone or together with its employees, are assumed to be under [the Tort Claims Act] for purposes of section 101.106." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (internal quotation omitted). A tort action "could have been brought under" the TTCA regardless of whether the Act waives immunity. *Franka*, 332 S.W.3d at 375.

13

relief under state law. For the reasons stated above, the Court **GRANTS** the Third Motion to Dismiss of Defendants Engleman & Litvin [ECF No. 41] and **DISMISSES** Plaintiff's causes of action without prejudice.

While the Court questions the futility of repleading under the facts and circumstances of this case, including video footage of the event, the Court nevertheless **GRANTS** Plaintiff leave to amend her complaint. The Court **ORDERS** Plaintiff to file any amended complaint by November 11, 2022. If the amended complaint is not filed by this date, Plaintiff's claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED October 21, 2022.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**